UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHIRLEY M. PELHAM

    Plaintiff,

v.                                      CASE No. 8:04-CV-435-T-TGW

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

    Defendant.

_____

ORDER
===

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-six years old at the time her insured status expired and who has a ninth-grade education, has been primarily

---

[1] Michael J. Astrue has become the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted as the defendant in this suit.

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

employed as a bait gauger on an assembly line (Tr. 36, 37, 88). The plaintiff ceased working in 1986 and, after being diagnosed with Huntington's disease in 1995, filed a claim for Social Security disability benefits.[3] Her claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge pointed out that the plaintiff's insured status for disability benefits had expired on December 31, 1990 (Tr. 19). He concluded that, as of that date, the plaintiff was not disabled (Tr. 27). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

Thereafter, the plaintiff sought review of the law judge's decision in this court. In a Report and Recommendation, Magistrate Judge Elizabeth A. Jenkins recommended that the law judge's decision be reversed and remanded, finding that the law judge did not adequately evaluate the

---

[3]Huntington's disease is a rare inherited neurological disorder with both mental illness and abnormal physical movement (chorea) components (Tr. 392-93). Symptoms and signs of Huntington's disease develop subtly. "Dementia or psychiatric disturbances, ranges from apathy and irritability to full-blown bipolar or schizophreniform disorder, may precede the movement disorder or develop during its course." The Merck Manual (17th ed.), p. 1465. Huntington's disease cannot be treated or halted, though antipsychotics provide some limited relief. Id. "Patients ultimately lose physical and mental abilities to care for themselves. Walking becomes impossible, swallowing difficult, and dementia profound." Id.

treating physician's testimony, failed to use the opinion of a medical advisor as directed by Social Security Ruling ("SSR") 83-20, and did not determine if the plaintiff's disease met a listing in Appendix 1 (Tr. 210). District Judge Richard A. Lazzara adopted her Report and Recommendation, and reversed and remanded the law judge's decision (Case No. 8:98-CV-2206-T-26EAJ, Doc. 16).

A different law judge subsequently conducted another hearing. Following that hearing, the law judge determined that the plaintiff was not disabled prior to the expiration of her insured status (Tr. 388). After the Appeals Council declined to review the decision, the plaintiff filed this suit. However, because the tape of the hearing was blank, the Commissioner made a motion to remand, and that motion was granted (Tr. 405). A supplemental hearing was held on May 19, 2006.

The law judge thereafter issued a decision finding the plaintiff not disabled as of her date last insured of December 31, 1990 (Tr. 186). He found that the plaintiff's Huntington's disease was a severe impairment but that it did not did not meet, or medically equal, one of the listed impairments in Appendix 1, 20 C.F.R. Part 404, Subpart P, before her insured status

expired (Tr. 191). The law judge found that, prior to December 31, 1990, the plaintiff had the residual functional capacity to perform medium work with occasional social interaction limitations (id.). Based upon the testimony of a vocational expert, the law judge found that the plaintiff could have returned to her past work as a bait gauger and also could have performed other jobs that are available in significant numbers in the national economy (Tr. 195, 196-97). Accordingly, the law judge found that the plaintiff was not disabled prior to the expiration of her insured status. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A). In this case, moreover, the plaintiff must show that she became disabled before her insured status expired on December 31, 1990. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

There is no question that the plaintiff suffers from Huntington's disease or that she has become totally disabled from that condition. The plaintiff's claim fails, however, because the evidence does not compel a finding that the plaintiff's condition was disabling on, or before, December

31, 1990, when her insured status expired. At that point, the plaintiff was not receiving medical treatment for any significant medical impairment. Moreover, her Huntington's disease was not even mentioned until May 4, 1995, when Dr. Juan L. Joy stated that her condition was "probably an early stage of Huntington's disease" (Tr. 129).

In view of the lack of contemporaneous medical findings, this case boils down essentially to a choice between competing medical opinions from no earlier than June 1996 concerning whether the plaintiff's Huntington's disease was disabling as of December 31, 1990. The plaintiff submitted responses to four questions propounded by plaintiff's counsel to Dr. Eberto Pineiro on June 25, 1996, and to Dr. Robert A. Hauser on December 4, 1996 (Tr. 171, 172). The questions, which are seemingly designed to prove that the plaintiff was totally disabled on, or before, December 31, 1990, are poorly worded and do not even make that specific inquiry. Rather, as the law judge noted (Tr. 193, 194), question four (which is not even a proper sentence) assumes the inability to engage in substantial gainful activity since 1986 (id.) without that inability having been the subject of a question. Moreover, the questions do not ask the doctors to set forth the functional limitations that the plaintiff was purportedly suffering as of

December 31, 1990. Further, they do not ask the doctors for any explanation for their opinions.

The law judge also had before him an opinion from a medical advisor, Dr. Alexandre B. Todorov, in accordance with the direction from Judge Jenkins that such an opinion be obtained (Tr. 215-16). Dr. Todorov responded to medical interrogatories at length (Tr. 231-40, 241-42), stating that he "spent about twenty (20) hours reviewing the records in the light most favorable to Mrs. Pelham" (Tr. 240). He expressed the opinion that the plaintiff's "disability began after December 31, 1990" (id.).

All three doctors agreed that the plaintiff suffers from Huntington's disease and that she became disabled from that disease. They disagreed whether she was disabled by December 31, 1990. Where there was disagreement, the law judge accepted the opinion of Dr. Todorov. Moreover, he explained in detail why he did so (Tr. 192-95).

The plaintiff raises three contentions to the law judge's decision (although under just two headings). The contentions are primarily predicated upon the opinions of Drs. Pineiro and Hauser. The contentions fail because the law judge reasonably, and adequately, discounted the opinions of those

doctors to the extent they indicated that the plaintiff was disabled on, or before, December 31, 1990.

The plaintiff argues that the treating physicians' opinions are controlling (Doc. 15, p. 8), apparently referring to Drs. Pineiro and Hauser. The law judge is required to give opinions of treating physicians substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The principle concerning the weight to be given to the opinions of treating physicians does not appear to apply because, at the time the two doctors submitted their responses, they had seen the plaintiff only once (compare Tr. 171, 173; Tr. 172, 259). See Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).[4] Moreover, Judge Jenkins noted in her Report and

---

[4] While the doctors submitted additional responses subsequently, those responses do not shed meaningful light on the issue of the plaintiff's condition as of December 31, 1990 (Tr. 354, 363).

Recommendation that the "plaintiff concedes that Drs. Pineiro and Hauser were not her 'treating' physicians as that term is typically used" (Tr. 216).

In any event, even if the two doctors were considered as treating physicians, there was still ample basis for the law judge to discount their opinions regarding disability as of December 31, 1990. Thus, the opinions are blatantly conclusory, and, as mentioned, that circumstance alone supports a discounting of the opinions. Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 2007 WL 3120318 *1 (11th Cir. 2007)(unpub. dec.).

The law judge, however, did not simply rest on that basis in reaching his determination regarding the doctors' opinions. As indicated, the law judge had before him a thorough opinion from Dr. Todorov, as contrasted with the conclusory opinions of Drs. Pineiro and Hauser. The law judge found "Dr. Todorov's opinions to be highly persuasive" (Tr. 191). He went on to explain why he was discounting, in part, the opinions of Drs. Pineiro and Hauser as follows (Tr. 193):

> The undersigned agrees with Dr. Pineiro that the claimant was likely affected by Huntington's disease prior to December 1990 because this is supported by medical literature (Exhibit 45) and also by the opinions of Drs. Todorov, Mueller, and

Pineiro [sic] (Exhibits 22, 23, 37). However, the undersigned rejects his opinion to the extent that it purports to establish limitations beyond those found in the residual functional capacity for basically the reasons set forth by Dr. Todorov, as shown in his Exhibit 37, question 7 responses. In sum, Dr. Todorov stated that Dr. Pineiro's statements that the claimant was considerably and substantially affected by Huntington's disease prior to December 31, 1990[,] were not supported by his treatment notes (Exhibit 37). The undersigned notes that Dr. Pineiro indicated that he believed that the claimant's daily activities were considerably affected by Huntington's disease prior to December 1990, but then acknowledged that he did not know for sure to what degree. Then, to compound matters, Dr. Pineiro goes on to say that he believed her ability to work prior to December 1990 was substantially affected when he had previously indicated that he did not know the degree to which her daily activities were affected. These inconsistencies detract from Dr. Pineiro's credibility and the undersigned finds the opinion of Dr. Todorov to be much more persuasive. The undersigned also rejects Dr. Pineiro's response to question 4 of Exhibit 23 because he gave no reasons to support his opinion and it assumes facts that are not shown to be true, i.e., that the claimant was unable to engage in substantial gainful employment since 1986. This is a legal determination that must be made by the undersigned after careful consideration of all the evidence of record, not a medical consideration that would be within the scope of Dr. Pineiro's expertise.

With respect to Dr. Hauser's opinion, the law judge stated (Tr. 193-94):

> The undersigned partially rejects [Dr. Hauser's] opinion.... Dr. Hauser also opined that the claimant's daily activities were considerably interfered with prior to December 1990 and that her ability to work prior to 1990 was moderately affected....Taking [this language] together as a whole, they indicate at least a basic ability to adequately perform activities, whether they be work related or related to daily activities. Dr. Hauser gives no specifics with regard to how the claimant was limited prior to December 1990, but the substance of his opinions in response to questions 1-3 of Exhibit 24 is such that while the claimant was limited, she did have the ability to adequately perform daily activities and work activities within whatever limitations she did have...The undersigned rejects Dr. Hauser's response to question 4 of Exhibit 24 because he gave no reasons to support his opinion and it assumes facts that are not shown to be true, i.e., that the claimant was unable to engage in substantial gainful employment since 1986.

These explanations amply justify the partial rejections of the opinions of Drs. Pineiro and Hauser.

The plaintiff argues further that Dr. Todorov's opinion is problematic because he never examined her. However, neither Dr. Pineiro, nor Dr. Hauser, examined the plaintiff until years after the plaintiff's insured status expired at the end of 1990. Significantly, Dr. Todorov was not disagreeing with the diagnosis of Huntington's disease. Rather, he was

disagreeing with the opinions concerning the plaintiff's condition years before Drs. Pineiro and Hauser saw the plaintiff. The plaintiff has failed to provide any cogent reason why, under these circumstances, Dr. Todorov was at a significant disadvantage as compared with the other two doctors because he did not personally examine the plaintiff. After all, Dr. Todorov had a great deal of information concerning the plaintiff, and he reported that he spent about twenty hours reviewing it (Tr. 240).

The plaintiff points out that Dr. Todorov did not consider Dr. Hauser's report. That is apparently because that was not among the materials sent to him (see Tr. 231). In fact, that report seems to have been added to the record at some later point, since Judge Jenkins commented that there is no evidence that Dr. Hauser examined the plaintiff at any time (Tr. 216). In all events, there is nothing in Dr. Hauser's report of November 12, 1996, that is, in any way, inconsistent with Dr. Todorov's opinion concerning the plaintiff's condition as of December 31, 1990 (Tr. 259-61). If anything, the time of developments set out in the History of Present Illness in Dr. Hauser's report supports Dr. Todorov's opinion that the impairment became disabling after that date (see Tr. 259). Thus, contrary to the plaintiff's assertion, the

unavailability of Dr. Hauser's report does not render Dr. Todorov's opinion suspect.

In sum, even assuming that Drs. Pineiro and Hauser are viewed as treating physicians at the time they rendered their opinions, the law judge showed good cause for discounting their opinions concerning the plaintiff's status as of December 31, 1990. Moreover, the law judge could reasonably find that Dr. Todorov's opinion was highly persuasive.

The plaintiff also contends that the law judge should have found the plaintiff disabled because she meets listing 11.17 in Appendix 1 regarding Huntington's disease (Doc. 15, p. 8). This contention is meritless.

In the first place, the contention was not adequately developed. The Scheduling Order provided that "any ... discrete challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 12, p. 2). Even assuming that the plaintiff's cursory reference to listing 11.17 satisfies the requirement regarding legal standards, the contention is clearly not supported by citations to pertinent facts. Consequently, this contention is appropriately deemed abandoned.

In any event, the plaintiff has the burden to prove that, prior to the expiration of her insured status, she met, or equaled, listing 11.17 in Appendix 1 and thus would be deemed disabled without regard to vocational considerations. See 20 C.F.R. Part 404, Subpart P, App. 1; Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). Moreover, "when a claimant contends that [s]he has an impairment meeting the listed impairments entitling [her] to an adjudication of disability under regulation 404.1520(d), [s]he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986). The plaintiff has clearly failed to make such a showing.

Furthermore, the law judge expressly found that the plaintiff did not meet, or equal, the requirements of listing 11.17 (Tr. 191). Particularly in light of the plaintiff's failure to point to any specific findings demonstrating that, as of December 31, 1990, she met, or equaled, listing

11.17, there certainly is no basis for concluding that the evidence compels a finding contrary to the law judge's determination.

The plaintiff argues, in addition, that SSR 83-20 mandates a finding of disability prior to December 31, 1990. It does no such thing. Rather, SSR 83-20 simply explains, among other things, that a claimant's onset date may need to be inferred. Thus, it provides in pertinent part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset date and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

Moreover, it states that a law judge should call on the services of a medical adviser if the onset date must be inferred. The law judge proceeded entirely in accord with SSR 83-20. Consequently, that provision does not aid the plaintiff's claim.

The plaintiff does not develop any contentions other than the three that have been discussed. Since the Scheduling Order required the plaintiff to "identify with particularity the discrete grounds upon which the

administrative decision is being challenged" (Doc. 12, p. 2), any other contentions are properly deemed abandoned.

In this regard, it is noted that the plaintiff mentions that the law judge rejected her testimony and that of her husband (Doc. 15, p. 9). However, she does not develop any argument that the law judge erred in doing so.

In addition, I question whether, as the law judge said, the vocational expert testified that the plaintiff could return to prior work as a bait gauger (Tr. 195; see Tr. 457-61). Any error on this point, however, would be harmless since the law judge, based upon testimony of the vocational expert, found that there were a number of jobs in the national economy that the plaintiff could perform at the time she was last insured (Tr. 196-97). Importantly, other than the contention that the plaintiff was totally disabled on, or before, December 31, 1990, the plaintiff does not challenge the functional limitations found by the law judge in determining the plaintiff's residual functional capacity, and does not challenge the jobs that the law judge found that the plaintiff could perform.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 17th day of March, 2008.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE